# UNITED STATES DISTRICT COURT
for the
Central District of California

In the Matter of the Search of ) 
) 
The Premises Located at ) Case No. 2:24-MJ-981
700 Bonsall Avenue, Unit #224 )
Los Angeles, California 90025 )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(9) | domestic violence misdemeanant in possession of firearm or ammunition |
| 18 U.S.C. § 930(a) | possession of firearm on federal property |
| 38 U.S.C. § 901(c), 38 C.F.R. § 1.218(a)(13) | possession of firearm on VA property |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

/s/ SA Anthony Heddell
_____
*Applicant's signature*

SA Anthony Heddell, U.S. Dept. of Veterans Affairs, Office of Inspector General
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state: Los Angeles, CA

Hon. Steve Kim, United States Magistrate Judge
*Printed name and title*

AUSA: Jeremy K. Beecher (x5429)

**ATTACHMENT A**

The SUBJECT PREMISES to be searched is located at 700 Bonsall Avenue, Unit #224, Los Angeles, CA 90025, which is known to be the residence of DEL LAMONTE GILLS.  The SUBJECT PREMISES is located in Building 205 of the supportive housing complex for homeless and at-risk veterans at the West Los Angeles, Veterans Affairs Medical Center.

Building 205 is a white, stucco, three-story apartment building located at the foregoing address, as pictured below.  The SUBJECT PREMISES is located on the second floor of the building; the unit number 224 is imprinted on the wall next to the front door, which is brown in color, and wood and metal in construction, as pictured below.  The following photographs accurately depict Building 205 and the entrance to the SUBJECT PREMISES as of February 15, 2024:

ii






**ATTACHMENT B**

**List of Items to Be Searched for and Seized**

1. The items to be seized at the SUBJECT PREMISES are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(9) (domestic violence misdemeanant in possession of firearm or ammunition) 18 U.S.C. § 930(a) (possession of firearm on federal property), and 38 U.S.C. § 901(c), 38 C.F.R. § 1.218(a)(13) (possession of firearm on VA property), to include the following:

    1. Any firearm including, but not limited to, a black, semi-automatic rifle;
    2. Any separate piece or part of a firearm;
    3. Any ammunition;
    4. Journals, notes, photographs, correspondence, or communications, reflecting, referring to or relating to GILLS's obtaining, purchasing, or selling a firearm;
    5. Documents reflecting GILLS's ownership, dominion, and/or control over any firearm; and
    6. Records, notes, correspondence, documents, contracts, and/or bids, in any form, regarding GILLS's ownership of any firearm.

**AFFIDAVIT**

I, Anthony S. Heddell, being duly sworn, depose and state as follows:

## I. INTRODUCTION

1. I am a special agent with the U.S. Department of Veterans Affairs, Office of Inspector General ("VA OIG"), Criminal Investigations Division, assigned to the Los Angeles, California, Resident Agency. I was employed by VA OIG starting in 2004 as an Administrative Investigator. In 2006, I successfully completed the Criminal Investigators Training Program and Inspector General Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I was assigned to the VA OIG's Southeast Field Office in St. Petersburg, FL. From 2012 to 2017, I worked as a Special Agent for the VA OIG's Office of Professional Responsibility. From 2017 to 2021, I served as a Special Agent/Executive Assistant for the VA OIG's Assistant Inspector General. In 2021, I started work as a Special Agent for the U.S. Department of Justice, Office of Inspector General ("DOJ OIG") and in 2023, I returned to VA OIG as a Special Agent working in the Los Angeles, California, Resident Agency.

2. Over the course of my career with VA OIG and DOJ OIG, I have investigated criminal allegations involving fraud against government programs and operations committed by federal employees, contractors, and beneficiaries. I have investigated allegations related to compensation fraud, pension fraud, healthcare fraud, drug offenses, sexual assaults, suspicious

deaths, and threats against government employees. I have affected arrests of persons charged with federal statutes. During the investigation of these alleged violations, I interviewed and spoke to suspects, victims, and witnesses related to these investigations.

### III. PURPOSE OF AFFIDAVIT

3. This Affidavit is made in support of a search warrant of the residence of DEL LAMONTE GILLS at the West Los Angeles Veterans Affairs Medical Center ("WLA VAMC"), described more fully in Attachment A (the "SUBJECT PREMISES"), for the items to be seized described in Attachment B, which are the evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922(g)(9) (domestic violence misdemeanant in possession of firearm or ammunition), 18 U.S.C. § 930(a) (possession of firearm on federal property), and 38 U.S.C. § 901(c), 38 C.F.R. § 1.218(a)(13) (possession of firearm on VA property).

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## IV. SUMMARY OF PROBABLE CAUSE

5. In January 2024, the VA Police Department ("VAPD") received information that a resident of the WLA VAMC's supportive housing complex for homeless and at-risk veterans, DEL LAMONTE GILLS, was seen carrying an AR-15-type rifle inside the facility. Based on subsequent investigation, including a review of video surveillance from inside the facility, law enforcement believes that GILLS has been carrying what appears to be an AR-15-type rifle inside the facility over a period of multiple weeks and keeps the firearm inside his room at the facility (i.e., the SUBJECT PREMISES) when not carrying it. GILLS has a prior state-court conviction for misdemeanor domestic violence and is not authorized to carry a firearm on federal property including at a VA facility.

## V. STATEMENT OF PROBABLE CAUSE

6. Step Up on Second, Inc. ("Step Up") manages the WLA VAMC's supportive housing complex for homeless and at-risk veterans. The complex currently consists of multiple buildings that together offer more than 200 units of supportive housing for homeless and at-risk veterans and their families.

7. According to a VA Police Department incident report, on January 18, 2024, Officer Nereida Ulloa Salas of the WLA VAMC received a call from a Step Up manager, Nelly Galicia, regarding a report of a resident in possession of weapon.

8. According to the VAPD incident report, Galicia received a call from WLA VAMC supportive housing resident S.F. on January 20, 2024. S.F. stated that on January 16, 2024, and

3

again on January 18, 2024, he saw a male carrying what appeared to be an "AK-47"-type firearm into Building 205 of the supportive housing facility.  (While the incident report indicated S.F. saw an "AK-47"-type firearm, S.F. later told investigators he believed the firearm was an AR-15.)  S.F. stated that he waited two days to report what he had seen out of fear that something could happen to him for reporting the incident.

   9.   According to the VAPD incident report, Galicia reviewed interior surveillance video from Building 205 of the supportive housing complex, in which the SUBJECT PREMISES is located.  Galicia observed in the surveillance video an adult black male, whom Galicia knew to be GILLS, walking through the hallways of Building 205 with what appeared to be a black rifle slung over his body.  Galicia also observed in the surveillance video GILLS exit the SUBJECT PREMISES with the firearm and walk to another unit, where another resident resides.

   10.  Based on my review of law enforcement databases, GILLS was convicted in 2012 of misdemeanor infliction of corporal injury on a spouse or cohabitant in violation of California Penal Code § 273.5(A), in Los Angeles Superior Court, Case Number 2BV0114801.  He was sentenced to 10 days' jail and 36 months' probation and ordered to pay restitution.

   11.  In addition, based on my review of law enforcement databases, GILLS currently has an active arrest warrant, dated February 14, 2019, issued by the United States District Court for the Central District of California on a charge of Possession

of Narcotics Paraphernalia.  The active warrant (#7452227) originated from a previous case where VAPD officers found GILLS possessing drug paraphernalia at the WLA VAMC.

12.  On January 23, 2024, I and a VAPD Criminal Investigator interviewed S.F.  S.F. stated that on January 16, 2024, between approximately 5:30 PM and 7:00 PM, he was alone, having a cigarette behind Building 205 at the WLA VAMC, when he witnessed a black male who appeared to be in his 50s or 60s walking with what appeared to be a short-barreled, AR-15-type rifle.  S.F. saw the male pass by him and then enter Building 205.  S.F. said he observed a magazine inserted into the rifle as well as a rifle scope in the male's right back pants pocket.  S.F. said because of his time in the military, he knew the difference between what a real firearm looked like versus an imitation firearm, and that the rifle appeared to be real.  He also stated he believed the rifle was real because it made a metallic, "clinking" sound consistent with being a real rifle as the male passed him.  S.F. observed the male use a key fob to enter Building 205.  S.F. reiterated that he had waited two days to let building management know about what he saw because said he was afraid the man with the firearm would find out he had reported it.  When shown still photographs of GILLS from surveillance video maintained by Step Up, S.F. stated he was "pretty confident" the individual depicted in the video was the same individual he had seen carrying the firearm on January 16, 2024.

13. I have reviewed interior surveillance video maintained by Step Up from Building 205 as well as another building in the supportive housing complex, Building 208. Based on my review of the video, I believe the following is depicted:

    a. On January 16, 2024, GILLS entered the SUBJECT PREMISES carrying what appears to be a rifle:

 

    b. On January 18, 2024, GILLS exited the SUBJECT PREMISES with what appears to be the buttstock of the same rifle protruding from of his backpack:

6



c.      Roughly two hours later, GILLS was seen in the corridor of a different building in the supportive housing complex, Building 208, wearing a green jacket and carrying what appears to be the same rifle:



7

  

  

      d.    On February 11, 2024, GILLS was seen in Building 205 wearing a long coat.  Based on my review of the video footage, I believe GILLS's movements and arm positioning are consistent with his attempting to conceal his carrying of the firearm by keeping it under his jacket and using his arm to control and conceal it:

8



13.  Based on my investigation, including my review of surveillance video and information received from Step Up, and discussions with security guards at the supportive housing

9

complex, I am not aware of any information suggesting that GILLS has transferred or sold the firearm or that he has permanently relocated the firearm from the SUBJECT PREMISES. The most recent surveillance footage I have viewed that I believe shows GILLS possessing the firearm, from February 11, 2024 (see Paragraph 12(d), above), depicts GILLS departing from and then later returning to the SUBJECT PREMISES with what I believe is the firearm underneath his jacket. As of February 11, 2024, Step Up confirmed that GILLS continued to reside at the SUBJECT PREMISES. Based on my investigation, I believe GILLS continues to reside at the SUBJECT PREMISES at present. Accordingly, I believe it is likely that GILLS continues to keep the firearm inside the SUBJECT PREMISES when it is not on his person.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

## VI. **CONCLUSION**

14. For the foregoing reasons, there is probable cause to believe that the SUBJECT PREMISES will contain evidence, fruits, and instrumentalities of a violation of a felony under 18 U.S.C. 922(g)(9) (domestic violence misdemeanant in possession of firearm or ammunition), 18 U.S.C. § 930(a) (possession of firearm on federal property), and 38 U.S.C. § 901(c), 38 C.F.R. § 1.218(a)(13) (possession of firearm on VA property).

_____
Anthony S. Heddell
Special Agent
U.S. Department of Veterans
Affairs, Office of Inspector
General, Criminal
Investigations Division

Subscribed to and sworn before me
this ____ day of _____, 2024.

_____
HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE

11